**HARBOR SERVICE CORPORATION v. UNITED STATES.**

**THE ARCADIA.**

(Circuit Court of Appeals, Second Circuit. June 13, 1925.)

Nos. 257, 347.

1. **Maritime liens ⬤�ン28—Consent of owner of ship is sufficient authority for receivers ordering work to be done.**

In general, when the owner of a chartered ship consents to receiver ordering work to be done on her, the consent is sufficient authority to support maritime lien.

2. **Maritime liens ⬤⟩29—Receiver of ship belonging to United States, having it surveyed for classification on advice of Shipping Board, held to have been permitted to pledge ship.**

Receiver of ship belonging to United States having had ship surveyed and repairs made, in order that she might retain her classification after being advised by Shipping Board that it would be necessary, *held* to have authority to pledge ship, within Merchant Marine Act 1920, § 30, subd. P (Comp. St. Ann. Supp. 1923, § 8146¼ooo).

Appeal from the District Court of the United States for the Southern District of New York.

Separate suits by the Harbor Service Corporation and the Clinton Dry Docks, Inc., against the United States, as owner of the steamship Arcadia. From a decree for respondent in the first case, libelant appeals; and from a decree for libelant in the second case, respondent appeals. Reversed in first case, and affirmed in second case.

Appeals from two decrees in the admiralty upon libels under the Suits in Admiralty Act (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼l) for services and repairs done upon the Steamship Arcadia, owned by the United States and operated by the Shipping Board. In the suit of the Harbor Service Corporation the decree was for the respondent, and in that of the Clinton Dry Docks for the libelant. The evidence in both is substantially the same.

On March 31, 1920, the United States under a "bare boat" charter party, chartered the Arcadia to the Arcadia Shipping Company for a period of eight months. She was delivered on August 25th of that year, and operated by the charterer until November 17, 1920, when a receiver was appointed under a creditors' bill filed in the District Court for the Southern District of New York. The court appointed as receiver one Sterling, an assistant director of operations of the Emergency Fleet Corporation. The services and repairs for which the libels were filed in the case of the Harbor Company were furnished between May 20 and June 9, 1921, and in the case of the Clinton Company between May 11 and July 12, 1921. The charter having in any event expired on April 25, 1921, the District Court on June 2d directed the receiver to return the ship to the board, which he did on June 9th.

On May 2, 1921, the American Bureau of Shipping had notified the Shipping Board that, to retain her classification, the ship must be surveyed in June. On May 19th the manager of the "Contract Bureau of the Board" advised Sterling of this notice, and added: "This you will note will be necessary in order for the steamer to retain her classification in the records of American and foreign shipping, and would suggest therefore that you inform the American Bureau of Shipping when it is convenient to make examination of the vessel and take the necessary action to restore her classification in accordance with this survey." The survey was held on June 3d, and the services and repairs were only those which it required.

The defense in each case was that the libelants acquired no maritime lien, because the work was not done "upon the order of the owner of such vessel, or of a person authorized by the owner," in accordance with subdivision P of section 30 of the Merchant Marine Act of 1920 (Comp. St. Ann. Supp. 1923, § 8146¼ooo).

Crowell & Rouse and E. Curtis Rouse, all of New York City, for Clinton Dry Docks, Inc.

Walter B. Hall, of New York City, for Harbor Service Corporation.

Emory R. Buckner, U. S. Atty., and Ralph B. Romaine, both of New York City, for the United States.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). We think it unnecessary to consider the other questions raised, because in our judgment the suits depend up-

on the effect to be given to the letter of May 19, 1921, to Sterling from an acknowledged agent of the Shipping Board. Was this an "authorization" by the owner of the vessel, the board? We agree that it was not enough if the board merely induced him to order the work done; it must have permitted him to do it on its own behalf, in its own interest. Friendly intimation or advice would not necessarily constitute the authorization required by the statute; but the circumstances under which the parties acted made it more than that.

[1] In general, we think that, when the owner of a ship consents and the letter was surely a consent, to a receiver's ordering work to be done upon her, the consent is sufficient authority. Such contracts make debts of the receivers, payable from the assets in his hands, of which the ship is a part. The consent includes as a necessary consequence that the ship may be used, if the receiver would otherwise be insolvent. Ignoring any questions of marshaling, with which we are not concerned, the owner can only mean that, if necessary, the ship shall be taken; that it is in fact pledged to the debt. So we should be prepared to say that any conduct would be enough from which it could be gathered that the owner consented to a receiver's contract for such work. There is a valid distinction between such a case and one where the owner is dealing with a solvent charterer, with one whose personal responsibility he may assume to be sufficient to answer his engagements, and who has promised to discharge them as between himself and the owner.

[2] But the facts at bar make a much stronger case. The charter party had expired; delivery to the board was imminent. The receiver was in fact without funds; he had written to the board, asking for authority to make the repairs (at least, so he swore, though the letter is not in the record). It had been necessary several times before for the board to disburse the ship by taking receiver's certificates. The receiver was its official, in constant communication with it, appointed at its instance, to protect its interests, the only interests of any conceivable moment which existed. Reclassification was important only that the ship might sail the seas for the board's profit. With all this in mind, to say that a "suggestion" was not an authorization to do the work on the board's behalf seems to us beyond any reason. No one receiving such a letter could have any question that, if not directed, at least he was per-

mitted, to pledge the ship according to the ordinary maritime law.

Decree reversed in the suit of the Harbor Service Corporation.

Decree affirmed in the suit of the Clinton Dry Docks, Inc.